UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW L. BROWN,

                                Plaintiff,

                -vs-                                                  13-CV-625-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                Defendant.

---

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF, ESQ., of Counsel), Amherst, New York, for Plaintiff.

                              WILLIAM J. HOCHUL, JR., United States Attorney (SERGEI ADEN, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated April 16, 2014 (Item 15).

Plaintiff Matthew L. Brown initiated this action on June 17, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 8, 11). For the following reasons, the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

Plaintiff was born on November 14, 1960 (Tr. 110, 124).[1] He filed an application for SSI on August 31, 2010, alleging disability due to lumbar spine problems with pain radiating into both legs, with an onset date of July 1, 2001 (Tr. 110-13; *see also* Tr. 34, 57). The application was denied administratively (Tr. 60-67), and plaintiff requested a hearing which was held before Administrative Law Judge ("ALJ") David S. Lewandowski on January 17, 2012 (Tr. 25-56). Plaintiff testified at the hearing, and was represented by counsel. Vocational Expert ("VE") Jay Steinbrenner also testified.

In a decision issued on February 1, 2012, ALJ Lewandowski found that plaintiff was not disabled under the Act (Tr. 11-20). Following the sequential evaluation process outlined in the Social Security Administration Regulations (*see* 20 C.F.R. § 416.920), the ALJ reviewed the medical evidence in the record and determined that although plaintiff's lumbar spine dysfunction constituted a "severe" impairment, it did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 16-18). The ALJ discussed the testimony and documentary evidence regarding plaintiff's complaints of pain and other symptoms, including treatment notes from several emergency room visits, a consultative internal medicine examination report, and x-rays of the lumbosacral spine, and determined that while plaintiff is unable to perform any of his past relevant work, he had the residual functional capacity ("RFC") for a range of light

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

work, as defined in the Regulations,[2] with certain exertional limitations (*id.*). Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC with these limitations would be able to perform the requirements of a significant number of jobs existing in the national and local economies (Tr. 18-19), and using Rule 202.10 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since August 31, 2010, the filing date (Tr. 19).

The ALJ's decision became the final decision of the Commissioner on April 23, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to properly assess the credibility of plaintiff's testimony and statements with regard to his complaints of pain; (2) failed to obtain a treating source opinion to support his RFC assessment (3) improperly relied on the VE's testimony; and (4) failed to properly assess RFC by performing a function-by-function analysis of plaintiff's exertional limitations. *See* Item 11-1.

---

[2]"Light work" is defined in the Regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

The government contends that the Commissioner's determination should be affirmed because the ALJ's decision is based on substantial evidence. *See* Item 8-1.

## DISCUSSION

### I.  Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the Regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will


not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at \*7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.  Standards for Determining Eligibility for Supplemental Security Income Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months …," 42 U.S.C. § 1382c(a)(3)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 1382c(a)(3)(B). The Regulations set forth a five-step process to be followed when a disability claim comes

before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. § 416.920(g).

      The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets

her burden at the fifth step by resorting to the Grids.[3]  However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

### III.     The ALJ's Determination

In this case, ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since August 31, 2010, the date he applied for benefits (Tr. 16).  As indicated above, at steps two and three the ALJ found that plaintiff's lumbar spine impairment, while severe, did not meet or equal the severity of any of the impairments in the Listings (*id.*).

At step four, the ALJ found that although plaintiff was unable to perform his past relevant "light" work as a sales representative, sander, warehouse worker, conveyor line attendant, or janitorial cleaner, he had the RFC to perform a range of light work with the following limitations:

> [T]he claimant can occasionally perform postural activities except that he cannot climb ladders, ropes or scaffolds.  He requires the accommodation of alternating at will between sitting and standing.  He should avoid hazards such as unprotected heights.

(Tr. 16). At the final step, the ALJ determined that there are jobs existing in significant numbers in the national economy that plaintiff could perform, considering his age,

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education, and work experience in determining whether the claimant can engage in substantial gainful work existing in the national economy.  See *Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

education, work experience, and RFC (Tr. 19). Applying Rule 201.24 of the Grids, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from December 8, 2008 (the date the application was filed) through the date of the decision (Tr. 20).

## IV.     Plaintiff's Motion

### A.     Credibility

Plaintiff contends that the ALJ failed to properly assess the credibility of plaintiff's testimony regarding his complaints of disabling back pain. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 416.929(c)(3)(i)–(vii); see also Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ found that plaintiff's allegations of disabling back pain were not substantiated by the objective medical evidence in the record. The ALJ referred to reports of physical examinations and treatment notes from emergency room visits, indicating consistent diagnoses of sciatica with tenderness in the hip and lumbosacral spine, and no limitations of range of motion (Tr. 17; see Tr. 252-53; 258-59; 262), along with reports of

x-rays taken on February 9, 2007, showing "normal lumbar spine" (Tr. 270), and on December 23, 2010, showing "facet arthropathy" (Tr. 281).

In addition, the ALJ referred to the report and opinion of Dr. John Schwab, D.O., who conducted a consultative internal medicine examination of plaintiff on December 21, 2010, at the request of the Commissioner (Tr. 277-80). Dr. Schwab reported plaintiff's complaint of constant "sharp stinging type pain in his low back" radiating to both legs, which plaintiff rated on "a pain scale of 9/10" (Tr. 277). Plaintiff's activities of daily living were reported as cooking three times a week, shopping once a month, watching TV and listening to the radio (*id.*). Physical examination revealed no abnormalities in the cervical and thoracic spine, with "flexion 40 degrees, extension 10 degrees, full lateral flexion bilaterally, and full rotary movement bilaterally" in the lumbar spine (Tr. 279). In Dr. Schwab's opinion, plaintiff had "[l]ow back pain with radiation to both lower extremities" with "mild restriction to bending, lifting, and carrying" and prognosis of "fair" (*id.*). ALJ Lewandowski indicated that he gave "some weight to the opinion of Dr. Schwab in the absence of other opinion evidence from a treating or examining source" (Tr. 18), and that he "accommodated" this opinion in his RFC assessment (*id.*).

Upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing Regulations, and the weight of controlling authority. The ALJ properly noted the "very limited examination findings" (Tr. 18) to substantiate plaintiff's testimony and statements as to the disabling nature of his lower back pain, and correctly noted the "normal" results of x-rays indicating limited lumbar spine dysfunction (Tr. 17). The ALJ also adequately explained his determination that plaintiff's allegations of pain at

a level of 9 on a 10-point scale suggested "pain that is of such severity as to require significantly greater levels of treatment" than the record reflects (Tr. 18). Further, the ALJ properly considered the appropriate weight to be given to the examining consultant's finding of only "mild" functional limitations, in the absence of any other opinions in this regard from treating or consultative sources. This assessment is sufficiently specific to make clear to a reviewing court, and to plaintiff the reasons for the weight given to plaintiff's subjective complaints of pain.

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly assess plaintiff's credibility.

### B.     Duty to Develop the Record

Plaintiff also contends that the ALJ did not adequately discharge his duty to develop the record because he did not attempt to obtain medical opinions from plaintiff's treating physicians. In this regard, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted). This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled …," as well as "advising the plaintiff of the importance of such evidence." *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004). On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a

complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted). The Second Circuit also recently clarified that the ALJ's failure to request treating source opinions does not require remand "where, as here, the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." *Tankisi v. Commissioner of Social Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (citing *Moser v. Barnhart*, 89 F. App'x 347, 348 (3d Cir. 2004); *Scherschel v. Barnhart*, 72 F. App'x 628, 630 (9th Cir. 2003); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

In this case, the record before the ALJ contained plaintiff's hospital treatment records and diagnostic imaging which, as discussed above, consistently indicate presentment and diagnoses of plaintiff's limited lumbar spine dysfunction and mild functional restrictions. These indications are confirmed by Dr. Schwab's consultative examination and medical source statement, providing a sufficient record for the ALJ to reach his findings as to plaintiff's residual functional capacity for a range of light work with exertional limitations as specified. Significantly, plaintiff has not identified a treating source for the Commissioner to contact in order to obtain an opinion or statement about what plaintiff could do despite his impairment. Indeed, the record reflects that plaintiff was given the opportunity to do so at the hearing, but declined (*see* Tr. 28, 56).

Under these circumstances, the court finds that plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to discharge his affirmative duty to develop the record by obtaining a treating source statement containing a medical opinion regarding plaintiff's RFC.

### C. VE Testimony

Plaintiff also contends that the testimony elicited by the ALJ from the vocational expert was improper because the hypothetical question posed by the ALJ to the expert presented a vague and inaccurate portrayal of plaintiff's functional limitations. The court's review of the hearing testimony reveals otherwise.

The ALJ asked the VE to "assume an individual [of] the Claimant's age, education, and work experience who's capable of performing light exertional work with only occasional stooping, lifting, carrying, pushing and pulling. There would be no ladder, rope, [or] scaffold climbing. The individual should avoid hazards, including unprotected heights, with a sit/stand option" (Tr. 52). This is an entirely accurate portrayal of plaintiff's RFC as determined by the ALJ, based on substantial evidence in the record as indicated above.

Accordingly, plaintiff is not entitled to remand on the basis of improper VE testimony.

### D. Function-By-Function Analysis

Finally, plaintiff contends that the ALJ's RFC assessment is the product of legal error because the ALJ did not perform a function-by-function analysis as required by SSR 96-8p. This Ruling provides that before classifying a claimant's RFC in terms of exertional levels of work (*i.e.*, whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). The functions described in

paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). The Ruling further cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." SSR 96-8p, 1996 WL 374184, at *4.

In *Chicocki*, the Second Circuit declined to adopt a *per se* rule requiring remand whenever an ALJ fails to conduct an explicit function-by-function analysis as counseled by SSR 96-8p. Rather:

> The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.

*Chicocki*, 729 F.3d at 177 (citing cases from the Sixth, Seventh, Eighth and Ninth Circuits). The circuit court noted that "remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence

in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

In this case, as discussed above, the ALJ's determination reflects explicit consideration of plaintiff's functional limitations, based on the objective medical evidence in the record and the examining consultant's report and opinion indicating plaintiff's mild restrictions in work related activities such as bending, lifting, carrying, walking, and operating moving machinery (*see* Tr. 17). The ALJ incorporated these restrictions in his RFC assessment, finding plaintiff capable of performing light work as defined in the Regulations at 20 C.F.R. § 416.967(b), with the limitations of alternating at will between sitting and standing, avoiding ladders, ropes, scaffolds, and unprotected heights, and only occasionally performing postural activities (*see* Tr. 16-17). In the court's view, this analysis complies with the Regulations, Rulings, and controlling case law discussed herein regarding the requirements for considering a claimant's functional abilities on a function-by-function basis.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld. Accordingly, plaintiff's motion for judgment on the pleadings (Item 11) is denied, the Commissioner's motion for judgment on the pleadings (Item 8) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   September 10, 2014